et al, 223162 and 223163. It's Loris and D'Angelo. Good morning, your honors. May it please the court. Good afternoon. We've been here a while. Kimberly Bossie for Daniel Loris and Manuel Dominguez, who are police officers from the Shelton, Connecticut Police Department. The decision of the Connecticut District Court denying these officers summary judgment and qualified immunity should be reversed. The officers should be awarded qualified immunity for their actions taken in effectuating the arrest of the plaintiff, notwithstanding her admitted active resistance during the process of the arrest. What justification do these police officers have for a warrantless home arrest for a fender bender? Well, your honor, she had fleed the scene of the fender bender. It's in the record that she had engaged in a back and forth with the other driver who did press charges. The other driver waited. Miss Mahalo had indicated we don't need to call the police. You're good. I'm good. Here's my information. And she took off. And then the other driver sat there, called the police. Police came and they went to the department and she gave a statement. So after that statement was given to the police, knew who she was, knew where she lived. Right. Yes, your honor. And a warrantless home arrest is justified on the basis of those facts? Well, your honor, the police officers went to her home to speak with her. Miss Mahalo did not answer the door. She would not speak with them. She eventually opened the door. The police officer opened the screen door and pulled her out, right? According to her statement, yes. Okay. It is crystal clear in our circuit that that is an illegal arrest. Police officers can't do that. And I'm referring to United States and Allen decided December, January 2016. Was I on that panel? I think I was. It's a terrific. No doubt you contributed to it. If I may, your honor. Where law enforcement officers has summoned a suspect to the door of his home, her home in this case. He remains inside the home confines where they may not affect a warrantless across the threshold. Rest arrest in the absence of exigent circumstances. And Judge Lynch says that violated the Fourth Amendment. Just let me concur. Judge lawyer concur. Well, your honor, the difference in this case is there's no false arrest claim and there's no unlawful entry claim. There's no warrantless arrest claim. This is purely an excessive force claim and assault and battery. Plaintiff had the opportunity to make those claims and she didn't. So here the only issue and dispute is whether the force effectuating the arrest that eventually occurred was reasonable. While we maintain it was, we're here only on qualified immunity purposes. So it's our position that the law, with respect to being clearly established as to my clients, officers, Loris and Dominguez, not officer D'Angelo, officer D'Angelo, your honor, was the officer who initiated. Went to the door? He, yes, he under. And your clients were the ones who handcuffed her and threw her to the backseat. Well, my, my clients, your honor, assisted once officer D'Angelo showed that he was having issues gaining Miss Halo's compliance. My clients were there to hold one of her arms while officer D'Angelo held the other. And my other client put the handcuffs on her because she had been resisting. She had been, she admits in her depo testimony that she tried to go back inside her house once she was outside and once contact had been initiated. So she was resisting the de minimis contact needed to put handcuffs on her, which then escalated the situation. And so my client's involvement- Does the fact that the arrest was unlawful have any bearing on her resisting it? The legality of the arrest isn't in dispute and the officers had probable cause to arrest her here. There wasn't a warrant, that's correct. What did you say? I said that there was probable cause, probable cause to arrest isn't in dispute here. Assume hypothetically that the officers made an illegal arrest under the law of our circuit. Does that have any bearing on the resistance? The resistance with particular to my clients only? Yes. I would say that my clients would still be entitled to qualified immunity for their reasonable actions regardless of the legality of the arrest. Because once plaintiff began resisting the initial handcuffing, she then kicked one of my clients squarely in the groin. She urinated on the leg of another one of them, saturating the pant leg. So it evolved from being merely an effort to- So on this matter that you pointed out of resistance as it pertains to your client, Officer Loras, she says I'm incontinent effectively. And so I wasn't- I think that that's right. And so that this was an advertent urination on police officers. And you say, no, it was a deliberate urination that was a form of resistance. Is that right? No, Your Honor, that's not at all what I'm saying. I'm saying that the officers in the moment had no basis or reason to know that the urination was inadvertent. The testimony that I believe you're referring to is at Ms. Mihaylo's deposition where she testifies she is incontinent. Perhaps it's genetic. And she may need to have medical treatment for that. But the facts show and the record confirms that when Ms. Mihaylo was engaged with these officers, she said if you don't stop, if you don't stop trying to detain me, I'm going to pee on you. Which under the law with respect to qualified immunity, officers in the moment aren't required to inquire into the subjective intent of innocent protestations or of actions taken by arrestees that harm them. To do so would go against qualified immunity jurisprudence. It's an objective standard. And the district court states that itself in going through the gram factors. It's an objective analysis in what the officers are faced with at the time that the force is employed. And at that time, one officer had been kicked in the groin, inadvertent or not, it doesn't matter because they didn't know. Urination, inadvertent or not, they had no way to know that. And she had said, if you don't stop trying, I'm going to pee on you. And so based on that, they had no reason to believe she would willingly go to the car and she continued to struggle against them. So she says that as she was taken to the car, but again, you're going to have to correct me if you think I'm wrong. I'm sure you will. That she, whatever the level of resistance she engaged in prior to getting in the car, that had abated. And that, and I think her head was hit against the car. She said she was, I think your client, Officer Loras, pushed her into the car in a way that she got hit. Is that right? So her claim, Your Honor, which we have to take as true for the purposes of summary judgment, is that she hit the center console in the back seat of the police cruiser, which if you're familiar with police cruisers, there's no center console like there is between the driver and the passenger, perhaps in the front seat. And there's, you know, there's facts in dispute that aren't material to legal issues. She says her head was hit against the center console. I've been in the back of police cars for the right reasons, not the wrong reasons. And so I might agree with you, but that's what she says. And so if we accept her version of the facts, then why doesn't that rise to the level of some form of, arguably, some form of excessive force? Because qualified immunity was intended to protect all but the plainly incompetent. And here we have a situation which Ms. Mahalo admits happened very fast. She says, I don't know if, you know, they had my hands before I was in the air. I was up in the air, and then I was in the car. So it happened relatively quickly. And the officers were faced with someone resisting arrest, who they had reason to believe might be under the influence of alcohol. This was from the statement from the driver with whom she had gotten to the car accident with. And there's evidence in the record that she had had prior encounters while intoxicated. So the officers had some sort of knowledge about Ms. Mahalo. She wasn't an unidentified person to them. Did you know her before this? Yes, Your Honor. And because it happened so quickly, she had been resisting arrest. She kicked one of the officers straight in the groin, peed on another, because three of them had to carry her to the car, and they placed her in. Is it possible she hit her head? Sure. But was it unreasonable to use that force to get her into the car? No. She weighed, what, 100 pounds? Yes, Your Honor. She was petite, is the word, I think. Yes, Your Honor. Does this person have a right to resist an illegal arrest? If the force employed against her, so if the officer came up and punched her in the face, of course she would have a right to resist that. But that's not what we're dealing with here. And the arrest isn't in dispute. What's the applicable rule? Does a citizen have a right to resist an illegal arrest? Sure, they do. Within reason, though. You've given up your case because this was an illegal arrest. We would contend it's not an illegal arrest, Your Honor, and that's not what the issue is on appeal here. You know, if we had the opportunity to have an argument by Ms. Mahalo here, perhaps I could sit and come back on rebuttal with a more fleshed out answer for you, but we don't have that. Usually people in your position say this is great. If your opponent doesn't show up, I'm sorry they're complicating your life. No, not at all. All right. Judge Clark, you had questions about the handcuffs? She was in handcuffs. She was in handcuffs after they were able to secure them, yes. She had continued kicking, which resulted in the groin kick, which is why her legs also had to be lifted while carrying her to the car. Thank you very much. Thank you. Judges of the Court of Appeals, good afternoon. My name is Tom Gerard. I'm Officer D'Angelo's lawyer. We're in the same case. Just picking up on where you left off. Citizens don't have the right to resist arrest. Connecticut General. Wait, your co-counsel said they did. I'm going to cite Connecticut General Statutes 53A-23. Your honors can look it up. Self-defense, if you're being assaulted by somebody, might be one thing. You know, resist being shot or whatever. You can cover yourself, but this is not that. All right. If a citizen is being arrested, you cooperate and you win your case in court. That's 53A-23. But, your honors, this is a unique factual scenario. And once again, counsel said properly, this is not a Fourth Amendment search case. It's excessive force only, probable cause to arrest. We have someone who doesn't want to be arrested. That justifies hands-on. As they get hands-on, there's one officer who's kicked in. May I ask you about one particular moment? Right. It's my entire focus, and this is why I think your friend said my client is not your client. It's Officer DeAngelo. I understand that things happen very quickly, and officers need to make decisions. And a jury say, if you lose unqualified immunity, you might agree. So don't get me wrong in connection with asking the following question. But at the time she is in her home, she's having a back-and-forth initially behind a door and a screen door. Right. With the officers outside. So I was just accepting her version of the facts. She says she was scared but not resisting. She thought she had a deal. So she's talking to the officers, and she opens the front door, and she's talking. I believe she continues to try to talk to the officer. This is her version. And suddenly, he opens the screen door, and this is maybe the U.S. v. Allen curblidge issue, and grabs her arm forcefully. If you accept her version of the facts, could a jury reasonably determine that that was, right at that moment, a form of excessive force? I'm going to say no to that because the jury would know that there's probable cause to arrest her for evading responsibility. She left the scene of an accident, and the police officer has here, we're not talking about the threshold. No, that's not the search. But she has indicated she doesn't want to go voluntarily. She parked her car in the neighbor's driveway so maybe it wouldn't be seen. She's got all the lights off. She's crawling beneath the windowsill so she won't be seen. Her mother calls her and says, those are the police. You need to go outside. And she says, I know I need to do that. So once it, I mean, it'd be like if I- Did she say that she indicated that she wanted to go, and she didn't want to go voluntarily? She said at some point, she realized that she was putting up some resistance. But at that point, just before, just tell me where in the record she says this. Just before Officer D'Angelo reaches, opens the screen door, I think without warning, and grabs her, what is the state of affairs according to her? According to her, she was going to have a talk through the screen door with Officer D'Angelo. So was she resisting? I mean, you're saying she's resisting, and that's the reason. Well, actually, you're saying they could arrest her. Of course they could. That's no different than me talking to Officer D'Angelo on the street. We're forgetting the screen door because there's no search claim here. It's just a matter of, I'll talk to you, Officer, but I'm not agreeing to let you arrest me. That's not determinative. He can say, I'm taking you and putting you under arrest. And that's all that happened here. He put hands on, and that was justified. The record shows he pulled her out of the house. Sorry? The record shows he pulled her out of the house. Yeah, he did. He pulled her forward. That's true. He pulled her forward onto the door stoop, but he didn't drag her onto the front lawn like the case, the example that the district court was using as a comparator. He pulled her onto the stoop. She's going to be under arrest. She's kicked one officer in the groin. She pees on the other, and she goes horizontal. That's illegal. There's a Calamia case where an officer seems to do something similar where before the individual has an opportunity to comply, the officer shoves the person to the ground in an effort to make an arrest. Yeah, the case cited by the There's no opportunity to comply. It's just an immediate grabbing and use of force. That seems clearly established as excessive. No? I'm going to say no on the qualified immunity analysis, Judge Park, because not every reasonable police officer would know by reading that case that police officer rips a plaintiff off the banister, drags her across the front lawn, and then slams her head on the police cruiser. That could be excessive, and there was a qualified immunity denial. We're talking about she comes out of the, she comes to the door, opens the wood door, is forcibly taken onto the stoop. But then, given the fact that she's urinated in one officer, kicked the other, she's now horizontal. No, this is before. And you've got This is after, all that happens after they arrest her. We're talking about the reaching through the door and grabbing her out. That one, all right, so I You can see You can see that's illegal, and any reasonable police officer would be familiar with Judge Loya's opinion. I think we Not if I did, I concur, but yes I think we have to look at this as putting the door out of this, since we don't have a Fourth Amendment search claim. If this happened on the sidewalk, and a police officer, there was a conversation going on. We have a deal. We're just going to talk. And he says, you're under arrest, and gets my arm, and takes me, puts me back. Every reasonable police officer would not know that violates the Fourth Amendment. But that's not what we had here. We had a warrantless home arrest for a fender bender. That's, well, we're only here on a force claim. That's the whole point here. We only are here on a force claim. And I just want to finish with this point. If you have someone who, you know, bodily fluid's involved now. Someone's been kicked in the groin. They're horizontal. It makes sense that they would go into the All of that is after. I mean, so right at the moment at the door, it seems to me worse that the officer tricked her in saying, I'll agree to talk to you. And then used the force. I guess your argument to my original question is it's not as much force as was used in climbing. And I don't know if that's right. But I take it to be that's your first point. I think if you have to look at the case without the screen door present, because we're not talking about a Fourth Amendment search claim. It's just force. It becomes the same thing as if we're outside in the park. And the police officer has a deal. I just want to talk to you. No problem. Just this and that. And then without giving the individual an opportunity to comply, abruptly uses force, grabbing them to cuff them. That seems to me is not what should have succeeded. All right. So one scenario could have been the police officer said, all right. You're under arrest. And then escalate to hands-on. I don't think that the case law is clear that every time someone, every time an arrest is made where hands-on happens, because- That's not what I'm saying. I think it's the initiation of force by surprise. I think that to be specific about what happened. In our circumstances, there was reason to believe that if he gave her a chance to slam the wooden door in his face, she might do so. And he would. And so in another scenario, if the scenario was the police officer has reason to believe this person will bolt for me if I say turn around, so I'm going to get quick hands-on. I don't think the case law is not clearly established that everyone would know that the constitutional issue is beyond debate. That that is clearly excessive force. We don't have that. So you're relying now on lack of clearly established law as to whether a police officer can arrest or use force, notwithstanding a person's saying, look, I comply. What if she had raised her hands? Well, we didn't have that now, Judge. If we had, here I go, and then I wind up with force, that's one thing. But we have, look what this woman did. She fled a scene of an accident. She hit her car in the neighbor's driveway. She turned her lights off. Let's say all that. She shouted through the door. She says, you got me. And the screen door is still there. What would a reasonable officer know? We're not handling, it's not a Fourth Amendment search claim. We have to take the screen door out of it. That's because that's not our case. If she said, you got me, the officer said, okay, would you turn around, please, and that would not be. But hands on the arm is minimal. It's de minimis force. It's hands on the arm. No taser, no baton, no punching, kicking, anything by the police. We've got your argument. Thank you very much. Thank you. Thank you very much.